**F I L E D**

**UNITED STATES COURT OF APPEALS**

**March 9, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DANNY JACKSON FOUTCH,

Defendant-Appellant.

No. 06-5052

(N.D. Oklahoma)

(D.C. No. 05-CR-141-01-HDC)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.[**]

On September 8, 2005, a federal grand jury indicted Danny Jackson Foutch

for possession of a firearm by a felon in violation of 18 U.S.C. §§ 924(a) and

922(g) and possession of an unregistered sawed-off shotgun in violation of 26

U.S.C. § 5861(d). Mr. Foutch moved to suppress the gun on the grounds that it

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1 and 10TH CIR. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See FED. R. APP. P. 34(A)(2); 10TH CIR. R. 34.1(G). The case is therefore ordered submitted without oral argument.

was only discovered as the result of an unconstitutional search and seizure. After the United States District Court in the Northern District of Oklahoma denied Mr. Foutch's motion to suppress, Mr. Foutch pleaded guilty on the condition that he could appeal. He now asks this court to reverse the district court's determination that the Tulsa County Sheriff's Department did not violate his Fourth Amendment right to be free from unreasonable search and seizure. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

The record and the district court's findings reveal the following:

On February 11, 2005, at approximately 9:15 p.m., two members of the Tulsa County Sheriff's Department gathered to serve an arrest warrant for Mr. Danny Foutch for manufacturing methamphetamine, felony escape, and larceny. Deputy Jefferey Freeman and Reserve Deputy Thomas Payne sought to arrest Mr. Foutch at his home, a trailer situated in a clearing about 100 yards north of a rural road in Bixby, Oklahoma. Because Mr. Foutch had a history of eluding authorities, Deputy Payne stayed in the patrol car and covered the front of the home while Deputy Freeman surveyed the area behind the trailer. Deputy Payne then announced over the patrol car's loud-speaker that they had a warrant for Mr. Foutch's arrest and that Mr. Foutch should come out of the house. After Deputy Payne made the announcement a second time, Mr. Foutch's girlfriend, Butch Shatto, emerged from the trailer and declared that Mr. Foutch was not home.

2

After re-entering the trailer briefly, Ms. Shatto returned and indicated Mr. Foutch was on his way out of the trailer.

A few moments later, Deputy Freeman saw a white male dart out the back door and sprint toward the woods behind the house. Deputy Payne joined Deputy Freeman in chasing the suspect when he heard Deputy Freeman shout, "Sheriff's Office, put your hands up!" Out of a concern for their own safety, the deputies, who were unable to identify the streaking figure, chose not to pursue the suspect into the thicket.

The deputies asked Ms. Shatto, who had remained on the porch, whether Mr. Foutch, who is white, was the person who had run to the woods. She replied that she did not know. They also asked her if anyone else was still in the home. Ms. Shatto was not sure. Deputy Payne then arrested Ms. Shatto for harboring a fugitive and called for back-up. After Deputy Michael Elliot arrived, Deputy Payne transported Ms. Shatto and her daughter away from the scene, and Deputy Freeman and Deputy Elliot searched the trailer for Mr. Foutch. In the process of looking for Mr. Foutch, Deputy Freeman found a duffle bag full of men's clothes and a sawed-off shotgun lying next to it in plain view.

## II. Discussion

The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects. U.S. CONST. art. IV. This court reviews *de novo* the question of whether the government has violated a citizen's rights under

3

the Fourth Amendment. *United States v. Hernandez*, 93 F.3d 1493, 1498 (10th Cir. 1996). In the context of a motion to suppress, we consider evidence in the light most favorable to the prevailing party, and we will not disturb a district court's findings of fact absent clear error. *United States v. Cheromiah*, 455 F.3d 1216, 1220 (10th Cir. 2006).

In *Payton v. New York*, the Supreme Court held that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. 573, 603 (1980). As the Court explained in *Steagald v. United States*, "[b]ecause an arrest warrant authorizes the police to deprive a person of his liberty, it necessarily also authorizes a limited invasion of that person's privacy interest when it is necessary to arrest him in his home." 451 U.S. 204, 214 n.7 (1981). In *Valdez v. McPheters*, this court held that an arrest warrant could support the search of a dwelling where (1) the dwelling is the suspect's home and where (2) the police have an objectively reasonable belief that the suspect "could be found within at the time of entry." 172 F.3d 1220, 1225 (10th Cir. 1999). Because Mr. Foutch has not challenged the validity of the arrest warrant, we focus our inquiry on whether the government satisfied the two criteria this court articulated in *Valdez*.

The first prong is satisfied because there is no dispute that the trailer was Mr. Foutch's home. The second prong is also satisfied because the deputies had a

4

"reasonable belief" that Mr. Foutch was in the residence. *Id*. In *Valdez*, this court concluded that officers entering a suspect's dwelling with an arrest warrant need not have actual knowledge that he is home; rather, they must have an "objectively reasonable" belief that he is present. *Id*. The court emphasized that "actual viewing of the suspect on the premises is not required. Indeed, the officers may take into account the fact that a person involved in criminal activity may be attempting to conceal his whereabouts." *Id*. at 1226 (citation omitted).

Here, the district court found that Ms. Shatto's equivocating responses to the deputies' questions about Mr. Foutch's whereabouts gave them a reasonable basis to believe he was lurking in the trailer.

Mr. Foutch's brief to this court makes much of the fact that the deputies saw a white male bolt out of the back door of the trailer before the search. Mr. Foutch argues that this demonstrates the deputies knew he was not in the trailer. Yet, as the district court concluded after hearing evidence, the deputies did not know the identity of the fleeing suspect. Common sense dictates that one engaged in a criminal enterprise such as manufacturing methamphetamine may well have associates assisting with the process. Moreover, as we noted in *Valdez*, "officers may take into account the fact that a person involved in criminal activity may be attempting to conceal his whereabouts" in his home. *Id*. Hence, the mere fact that a white male scurried from Mr. Foutch's home does not preclude the deputies from having a reasonable belief that Mr. Foutch could still be in the

5

trailer.

### III. Conclusion

Accordingly, we AFFIRM the district court's denial of Mr. Foutch's motion to suppress.


Entered for the Court,


Robert H. Henry
Circuit Judge